IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00824-PAB-CBS

EVERPLAY INSTALLATION INC. and
ROLF HUBER,

      Plaintiffs,

v.

ROGER JOSEPH GUINDON,

      Defendant.

_____

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
_____

      This matter is before the Court on defendant Roger Joseph Guindon's Motion for
Summary Judgment [Docket No. 19].  The Court heard oral argument on the motion on
July 16, 2009.  The motion is fully briefed and ripe for disposition.  For the reasons
detailed below, the Court denies defendant's motion for summary judgment.

## I.  FACTUAL BACKGROUND

      In this case, plaintiffs Everplay Installation Inc. ("Everplay") and Rolf Huber
("Huber") seek to enforce a number of arbitral awards, court orders, and judgments
entered against defendant Roger Guindon ("Guindon") in Canada.  The undisputed
facts material to the Court's analysis are as follows:  Guindon and Huber were once
business associates in the field of marketing and installing athletic and recreational
playing surfaces.  In April 1993, Guindon, Huber, and Max Huber executed an
agreement incorporating plaintiff Everplay and setting forth the company's
organizational structure.  Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") [Docket

No. 20], Ex. 1, Attach. 1.  This agreement bound Guindon to a covenant not to compete with Everplay.  *Id.*  It also contains an arbitration clause.  *Id.*  In 1998, after the business relationship between Guindon and Huber went sour, Guindon brought suit in Canada.  Def.'s Br. ¶ 7; Pls.' Resp. to Def.'s Mot. for Summ. J. ("Resp.") [Docket No. 21] ¶ 7.  However, shortly after Guindon commenced his lawsuit, Huber succeeded in staying the matter and obtaining a court order mandating that the parties proceed to arbitration in accordance with the agreement between them.  Def.'s Br. ¶ 8; Resp. ¶ 8.

In September 1998, an interim order issued in the arbitration proceedings that required Guindon to honor the terms of the covenant not to compete included in the 1993 agreement between the Hubers and Guindon.  Def.'s Br., Ex. E.  Guindon participated, at least in part, in the arbitration proceeding through 1999.  *See* Pls.' Verified Petition Seeking Registration, Recognition and Enforcement of Foreign Arbitration Award and Foreign Court Judgments (the "Petition") [Docket No. 1], Ex. 11 (order of the Ontario Court of Appeal stating that, in June 1999, Guindon, through counsel, contacted the arbitration board in the arbitration matter seeking a hearing to rescind or vary the September 1998 interim order).  The interim order states that Guindon appeared in person before the arbitration panel on September 1, 1998 and requested a continuance, which was denied, and then withdrew from the premises and did not further participate in the hearing.  *Id.*

Following the entry of the interim award, Guindon began looking for work outside of Canada.  Guindon moved from Canada to Colorado in May 2001, where he obtained work with a company installing tennis courts.  Def.'s Br., Ex. A ¶ 17.  The arbitration proceedings, however, continued in Guindon's absence.  The arbitration culminated in

2

an arbitral award dated July 14, 2003 (the "2003 arbitral award"), charging costs –

including attorneys' fees – against Guindon in the amount of C$72,449.75.  Def.'s Br.,

Ex. N.

In Guindon's absence, Huber participated through counsel in court proceedings

involving Guindon, including a bankruptcy action and a fraudulent conveyance action.

Huber and Guindon had no contact with one another after Guindon left Canada until

2006, when their paths crossed at a trade show in Seattle, Washington.  Def.'s Br. ¶ 79;

Resp. ¶ 79.  Plaintiffs allege, however, that they were unaware that Guindon had

relocated to Colorado until December 2007.  Def.'s Br., Ex. U; Resp. at 19.  In June

2007, plaintiffs commissioned a search to locate a residential address for Guindon in

Canada, which, in November 2007, returned no current address for Guindon.  Resp.,

Ex. 2.  In November 2007, Huber obtained a judgment in the Ontario Superior Court of

Justice entering the 2003 arbitral award as an order of the court.  Def.'s Br., Ex. V.

Huber and Everplay commenced this lawsuit on April 22, 2008 seeking to

enforce various arbitration awards, court orders, and judgments, including the 2003

arbitral award, and to recover sums allegedly owed by Guindon under such awards,

orders, and judgments in excess of C$200,000.

Guindon moves for summary judgment based on three theories: (1) the

applicable statutes of limitations bar enforcement of certain arbitral awards, court

orders, and judgments obligating Guindon to pay monetary sums to plaintiffs;[1]  (2)

---

[1]Guindon also had argued that plaintiffs had failed to comply with the Canadian statute of limitations governing enforcement of arbitral awards.  He no longer challenges the timeliness of plaintiffs' enforcement under Canadian law.  *See* Def.'s Reply to Supplement [Docket No. 41] at 2, ¶ 4.

Guindon was deprived of procedural due process – adequate notice in particular –
concerning any arbitral or judicial proceedings post dating his departure from Canada;
and (3) the 2003 arbitral award is unenforceable because it was entered in
contravention of the procedures set forth in the parties' arbitration agreement.[2]  As
discussed below, genuine issues concerning material facts relevant to plaintiffs' claims
preclude the entry of summary judgment in Guindon's favor.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c)
when "the pleadings, the discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works of Colo., Inc. v. City &
County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if
under the relevant substantive law it is essential to proper disposition of the claim.
*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes
over material facts can create a genuine issue for trial and preclude summary
judgment.  *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).
An issue is "genuine" if the evidence is such that it might lead a reasonable jury to
return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th
Cir. 1997).  When reviewing a motion for summary judgment, a court must view the

---

[2]Guindon also disputes the calculations of award amounts.  There is, however, a
genuine issue as to that material fact.

evidence in the light most favorable to the non-moving party.  *Id.*

## B. Legal Framework for Enforcement of Foreign Arbitration Awards

Plaintiffs seek to enforce the 2003 arbitral award, and other awards stemming

from the arbitration proceedings between them and Guindon under the 1958

Convention on the Recognition and Enforcement of Arbitral Awards, popularly known as

the "New York Convention" (the "Convention").  June 10, 1958, 21 U.S.T. 2517 (1970).

Chapter Two of the Federal Arbitration Act incorporates the provisions of the

Convention in United States domestic law.  *See* 9 U.S.C. §§ 201-208.  Both the United

States and Canada are signatories to the Convention.  *Boston Telecommunications*

*Group, Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1045 (N.D. Cal. 2003).

Plaintiffs seek to enforce the various court orders and judgments referenced in their

Petition as a matter of comity under the principles announced in *Hilton v. Guyot*, 159

U.S. 113 (1895), and under the Colorado Uniform Foreign-country Money Judgments

Recognition Act (the "Recognition Act"), Colo. Rev. Stat. §§ 13-62-101, *et seq*.

At the hearing, the Court provided the parties the opportunity to submit

supplemental briefing on the question of whether an "order" was any less enforceable

than a "judgment."  The Recognition Act applicable at the time this suit was brought

defines a foreign judgment as "any judgment of a foreign state granting or denying

recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or

a judgment for support in matrimonial or family matters."  Colo. Rev. Stat. § 13-62-102

(1977).  The current version of the statute, effective August 5, 2008, provides that a

"'[f]oreign-country judgment' means a judgment of a court of a foreign country," Colo.

5

Rev. Stat. § 13-62-102(2) (2009), and the clause relating to the scope of judgments covered by the Recognition Act was moved to a separate section of the statute.  Colo. Rev. Stat. § 13-62-103(1), (2) (2009).  Otherwise, however, there is no indication that the definition of what constitutes a "judgment" pursuant to the Recognition Act has changed.  The Annotator's Note to the current version of the statute makes clear that "§ 13-62-102 is similar to § 13-62-102 as it existed prior to the 2008 repeal and reenactment."  The third Official Comment to the current version of § 13-62-102 notes that the "foreign-country judgment need not take a particular form – any order or decree that meets the requirements of this section and comes within the scope of the Act under Section 3 is subject to the Act," adding that a "judgment of a foreign court confirming or setting aside an arbitral award . . . would be covered by this Act."  One of the aforementioned requirements, aside from certain exceptions not applicable here, is that the foreign judgment must be "final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal."  Colo. Rev. Stat. § 13-62-103 (1977).  In short, an "order" is enforceable under the statute so long as it is the "functional equivalent" of a judgment.  *See Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 29 F.3d 79, 81 (2d Cir. 1994) (concluding that "the decree conferring *exequatur* on the [arbitral] award was the functional equivalent of a French judgment" and therefore enforceable under the New York Uniform Foreign Money Judgments Recognition Act); *cf.* Colo. Rev. Stat. § 13-62-109 (1977) ("This article shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

6

Nothing in the parties' supplemental briefs calls this into question.  Indeed, Guindon notes that "[o]ther jurisdictions that have adopted the Uniform Foreign Money-Judgments Recognition Act have enforced orders under the Act where such orders were the 'functional equivalent' of a judgment."  Def.'s Supp. Authority at 2.  Guindon instead asserts that it is the plaintiffs' burden to establish that the orders "are final, conclusive and enforceable under Canadian law."  *Id.*  Assuming that were true under the Recognition Act applicable at the time, Guindon has not sought summary judgment on the grounds that plaintiffs have failed to meet their burden of establishing that the Canadian court orders are not the "functional equivalent" of judgments.  Rather, he argues that he was not provided with due process as required by both the Recognition Act and the New York Convention, Def.'s Br. at 16, and that the Canadian proceedings were contrary to their arbitration agreement.  *Id.* at 17.

Furthermore, it is worth noting that the common law principles of comity still apply to enforcement of foreign country adjudications in appropriate circumstances not otherwise covered by the Recognition Act.  *See* Colo. Rev. Stat. § 13-62-108 (1977) ("This article does not prevent the recognition of a foreign judgment in situations not covered by this article."); *see also infra* Note 4.

The Court finds that the issues raised in defendant's motion for summary judgment generally do not require differentiating between individual orders, judgments, and awards for purposes of this analysis.  Moreover, plaintiffs' present claims for monetary sums against Guindon stem, by and large, from the arbitration proceedings between plaintiffs and Guindon.

7

Arbitration is a favored method of dispute resolution under United States law. Accordingly, "[a]s a general rule, judicial review over an arbitration award is very limited." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 827 (10th Cir. 2005). The arbitration awards at issue in this case are enforceable, if at all, under the Convention. *See supra* at 5; 9 U.S.C. § 202. In recognizing the Convention as part of federal law, Congress carried forward the general presumption in favor of the enforceability of arbitration awards. Specifically, 9 U.S.C. § 207 provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

The party opposing confirmation of a foreign arbitral award has the burden of proving the applicability of one of the grounds barring recognition under the Convention. *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *First State Ins. Co. v. Banco de Seguros Del Estado*, 254 F.3d 354, 357 (1st Cir. 2001). As with domestic arbitral awards, "review of arbitral awards under the New York Convention is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Encyclopaedia Universalis*, 403 F.3d at 90 (internal quotation marks and alterations omitted).

## C. Statute of Limitations

Guindon contends that plaintiffs may not enforce their arbitration awards against him because the statute of limitations precludes enforcement. Courts have interpreted

8

9 U.S.C. § 207 as imposing a three-year statute of limitations on enforcement of foreign

arbitral awards.  *See Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 158 (2d

Cir. 2003).  Plaintiffs concede in their Petition that "it is clear that the applicable statute

of limitations period has expired," but contend that "good cause exists" to toll the statute

of limitations.  Petition at 13, ¶ 40.

   "In the statute-of-limitations context, the initial burden is on the moving party to

demonstrate that there is no genuine issue of material fact as to the running of the

statute of limitations."  *Nehls v. Farmers Alliance Mut. Ins. Co.*, 238 F. App'x 381, 383

(10th Cir. July 10, 2007) (citing *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1428 (10th Cir.

1996)).  If the moving party satisfies this initial burden and the non-moving party

invokes the doctrine of equitable tolling, the non-moving party then has the "burden of

proving the existence of facts which, if proven true, would warrant a tolling of the

statutes of limitation."  *Tiberi*, 89 F.3d at 1428.  Disputed issues of fact materially

influencing whether the statute of limitations applies preclude summary judgment.  *See*

*Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1042 (10th Cir. 1980) ("The question

of whether a plaintiff should have discovered the basis of his suit under the doctrine of

equitable tolling does not lend itself to determination as a matter of law."); *Richardson v.*

*Frank*, 975 F.2d 1433, 1436 (10th Cir. 1991) (holding, in an employment discrimination

case, that whether relevant agency misled the plaintiff regarding the time limits

applicable to filing a charge of discrimination, among other things, presented a fact

question precluding summary judgment); *see also Trigg v. State Farm Mut. Auto. Ins.*

*Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005) ("Whether a statute of limitations bars a

particular claim is a question of fact.").

Although the parties have not cited and the Court has not located case law discussing whether the principle of equitable tolling applies to the three-year limitations period set forth in 9 U.S.C. § 207, the Court discerns no reason why tolling should not apply.  Federal law recognizes equitable tolling.  *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) ("federal statutes of limitations are generally subject to equitable principles of tolling").  Under federal law, equitable tolling applies "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  In cases involving employment discrimination claims, the Tenth Circuit has recognized that "if a plaintiff is actively misled, or has in some extraordinary way been prevented from asserting his or her rights, we will permit tolling of the limitations period."  *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267-68 (10th Cir. 1996) (internal quotation marks omitted).  Thus, the three-year limitations period of 9 U.S.C. § 207 may be equitably tolled in this case if plaintiffs demonstrate that Guindon's misconduct prevented them from filing their claims in the prescribed statutory period.  *See Irwin*, 498 U.S. at 96; *see also Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) (equitable tolling applies in "situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts").

10

Viewing the facts in the light most favorable to plaintiffs, Guindon voluntarily submitted to arbitration in 1998 and participated in these arbitration proceedings, with representation from counsel, until mid-1999.  After an unfavorable interim decision, Guindon left the jurisdiction in which the arbitration was proceeding without notifying his adversaries of his whereabouts or how to reach him.  Evidence presented by plaintiffs shows that Guindon intended to conceal facts about his new place of employment, if not his residence, from plaintiffs.  *See* Resp., Ex. 3 (August 2000 letter from Guindon to his attorney stating that "I don't want the Hubers to know where I'm working and for what company.").  Guindon did not make reasonable efforts to inform plaintiffs, the arbitration panel, or the court overseeing related Canadian proceedings between Guindon and plaintiffs of Guindon's current contact information.  Although plaintiffs conceded at the hearing that, in 2001, they received the August 2000 letter from Guindon to his attorney that states Guindon is moving to Colorado, Guindon started using the surname "Gilles" after moving to Denver.

These circumstances, if proven true, constitute grounds for tolling the time period in which plaintiffs were required to bring an action to enforce their arbitral awards against Guindon.  The foregoing rationale applies equally to any allegedly time-barred foreign judgments or court orders which may be enforceable under the Recognition Act.[3]  *See Brodeur*, 169 P.3d at 149.

_____

[3]  The Court harbors some doubt as to whether the Recognition Act provides a means for enforcing the Canadian court orders and judgments in this case.  *See Milhoux v. Linder*, 902 P.2d 856, 859 (Colo. App. 1995) (holding that "Colorado's Recognition Act cannot be utilized as a basis for requiring recognition of a foreign judgment until such time as a reciprocity agreement is adopted by the country in which the judgment is obtained").  Even so, principles of comity would allow enforcement so

In sum, the Court finds that a genuine issue of material fact exists as to whether Guindon's actions prevented plaintiffs from timely filing this action to enforce their arbitral awards.  Therefore, Guindon is not entitled to summary judgment based on application of the relevant statute of limitations.

### D. Procedural Due Process

One of the grounds allowing refusal of a foreign arbitral award under the Convention is inadequate notice to the party against whom the award is invoked regarding the appointment of the arbitrator or of the arbitration proceedings.  *See* Convention, Art. V.1(b).  Similarly, deprivation of procedural due process is a traditional exception to enforcement of judgments under the principle of comity.  *See MacArthur v. San Juan County*, 497 F.3d 1057, 1067 (10th Cir. 2007).  The Court assumes without deciding that the same is true of the Recognition Act, but notes that the version of the Act applicable here states that a "foreign judgment is not conclusive if: . . . [t]he judgment was rendered under a system which does not provide . . . procedures compatible with the requirements of due process of law."  Colo. Rev. Stat. § 13-62-105(1)(a) (1977).[4]  Guindon claims that, in light of his relocation to Colorado in May 2001, "any award or judgment issued after 2001 was issued without notice to Mr. Guindon and should not be enforced."  Def.'s Reply Br. in Supp. of Mot. for Summ. J.

---

long as the exceptions to recognition of foreign judgments as a matter of comity do not exist here.  *Id.* at 858.  Moreover, while Guindon touches on this issue in a footnote, he does not raise it as a basis for summary judgment.  In the absence of it being adequately raised and fully briefed, the court declines to take up the issue.

[4]Furthermore, a "foreign judgment need not be recognized if: . . . [t]he defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend."  Colo. Rev. Stat. § 13-62-105(2)(a)(1977).

[Docket No. 22] at 12.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  When a plaintiff "can reasonably ascertain the name and address of an interested party," due process requires "notice by mail or other means as certain to ensure actual notice." *United States v. Clark*, 84 F.3d 378, 380 (10th Cir. 1996) (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)) (alteration omitted).  "But due process does not require that the interested party actually receive the notice." *Id.*  So long as the party attempting to provide notice "acted reasonably in selecting means likely to inform the persons affected, then it has discharged its burden." *Id.* (internal quotation marks and alterations omitted).

Here, the undisputed facts show that Guindon had notice of the arbitration and court proceedings against him at least until the time he left Canada in search of work. Following his departure, the record shows that plaintiffs repeatedly attempted to serve notice on Guindon by mailing papers relevant to the arbitration and judicial proceedings to his last known address.  *See* Def.'s Br., Exs. M, O & S.  In fact, plaintiffs were ordered to do so by the Ontario Superior Court of Justice.  Petition, Ex. 12.  Until August of 2002, Guindon's wife resided at that residence and likely would have received such mailings.  Def.'s Br., Ex. I ¶ 8.  On the other hand, there is no evidence that Guindon attempted to inform plaintiffs of a new address at which he could be served or provided such contact information to any court, the arbitration panel, or even

the post office.  Instead, Guindon faxed a letter to his wife in June 2001 with instructions to forward it to the Ontario Court of Justice.  Def.'s Br., Ex. 1, Attach. 2.  In this letter, Guindon provided only his phone number as a means of contact.  *Id.* Guindon's wife states that she faxed this letter to the court per Guindon's instructions, *see* Def.'s Br., Ex. I ¶ 10, but there is nothing beyond this circumstantial evidence to indicate that the letter actually reached the appropriate presiding judge, the court's file, or Guindon's adversaries.

Based on the foregoing, a genuine issue of material fact exists as to whether plaintiffs' mailings to Guindon's last known address constituted a reasonable means of apprising Guindon of the ongoing proceedings.  See *Clark*, 84 F.3d at 380. Accordingly, Guindon has not satisfied his burden under Fed. R. Civ. P. 56 on his claim that any awards or judgments issued after 2001 may not be enforced for lack of due process.

### E. Noncompliance with Written Arbitration Agreement

The Convention also allows the refusal of a foreign arbitral award on the grounds that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ."  Convention, Art. V.1(d).  The 2003 arbitral award was entered by Robert F. Reid.  Def.'s Br., Ex. N.  Guindon contends that this violates the parties' arbitration agreement because that agreement specifies an arbitration panel of three arbitrators, rather than one.  The arbitration agreement in question provides:

> 5.02 Rolf and Max initially select William Gilmour as their nominee and Roger initially selects David Payne as his nominee.  If the

14

arbitrators so appointed are unable to resolve the matter in question informally, they shall refer the matter for formal arbitration to a panel of thee [sic] arbitrators the chairperson of which shall be another arbitrator agreed upon by both of them in accordance with and subject to the provisions of the Arbitration Act with the said two nominees continuing as the second and third arbitrators with the chair being the arbitrator selected by the nominees (or appointed, where the two nominees cannot agree, upon a chair by application to a court of competent jurisdiction pursuant to the Arbitration Act of Ontario).

Def.'s Mot., ex. A1 [Docket No. 20-3] at 8.

Given the favored status of arbitration as a method of dispute resolution, federal courts recognize the principle that "if a party 'fails to raise an issue to the arbitrators, the issue is forfeited.'" *Chemical Overseas Holdings, Inc. v. Republica Oriental del Uruguay*, 371 F. Supp. 2d 400, 402 (S.D.N.Y. 2005) (quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)) (alterations omitted).  Thus, parties to an arbitration are generally not permitted to "keep silent during arbitration and [later] raise arguments in enforcement proceedings . . . ." *Id.*  The undisputed facts show that, on August 22, 2002, the Ontario Superior Court ordered that, absent Guindon's selection of an arbitrator to serve on the arbitration panel in accordance with Article V of the arbitration agreement between the parties, the arbitration proceedings were to continue with only one court-appointed arbitrator.  The facts, in the light most favorable to plaintiffs, show that plaintiffs had no means of contacting Guindon to apprise him of the court's order regarding the composition of the arbitration panel and that Guindon intentionally left plaintiffs and the arbitration panel without such information.  Under these circumstances, a genuine issue remains as to whether Guindon waived his right to complain that the 2003 arbitral award was entered by an arbitration panel comprised of a sole arbitrator.  *Cf. Peterman v. State Farm Mut. Auto.*

15

*Ins. Co.*, 961 P.2d 487, 493 (Colo. 1998) ("Just as with other contractual rights, the right

to arbitration can be waived.  A party may waive the right to arbitration by taking actions

inconsistent with such right in circumstances where prejudice will accrue to other

parties.").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Roger Joseph Guindon's motion for summary

judgment [Docket No. 19] is DENIED.


DATED December 2, 2009.

BY THE COURT:


s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

16